# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| BERT HAWK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:12-06151-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REMANDING COMMISSIONER'S DECISION

Plaintiff Bert Hawk ("Hawk") seeks judicial review of the Commissioner of Social Security's ("the Commissioner") denial of his application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 *et. seq*. The Administrative Law Judge ("ALJ") found that although Plaintiff suffered from the severe impairments of intermittent vertigo, mild hearing loss, and migraine headaches, he still retained the residual functional capacity ("RFC") to perform his past relevant work as a computer technician. Additionally, the ALJ found that Plaintiff could perform work as a parts inspector, repair service clerk, and semi-conductor assembler. Finding that these positions exist in significant numbers in the national economy, the ALJ determined that Plaintiff was not disabled under the regulations.

After careful review, the Court holds the Commissioner's decision must be REMANDED because the ALJ failed to provide sufficient reasons for discounting the opinion evidence of Plaintiff's treating physician, Dr. Davin Turner, D.O. ("Dr. Turner").

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant.

## Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Hawk filed an application for disability insurance benefits on December 3, 2009, alleging a disability onset date of October 19, 2009. On December 24, 2009, the Commissioner denied his application at the initial claim level, and Hawk appealed the denial to an ALJ. Following the hearing on March 23, 2011, the ALJ issued his decision holding that Plaintiff was not disabled as defined in the Act. On October 25, 2012, the Appeals Council denied Hawk's request for review, leaving the ALJ's decision as the Commissioner's final decision. Hawk has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the

court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

**Analysis**

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends that the ALJ erred by discounting the opinion of his treating physician, Dr. Turner because the ALJ failed to provide sufficient reasons for giving it "little weight."[3] The Comissioner counters that the ALJ properly stated his rationale for discounting the opinion evidence, and his reasons were supported by substantial evidence.

The ALJ should usually assign controlling weight to a treating physician's opinion if that opinion is well-supported by, and consistent with, other evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). A treating physician's opinion, however, "is entitled to controlling weight only to the extent it is consistent with

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

[3] Plaintiff also contends the ALJ erred by (1) discounting Plaintiff's credibility, (2) failing to make specific findings regarding the demands of the claimant's past job and compare those findings with the Plaintiff's RFC limitations, and (3) relying on testimony from the vocational expert that conflicted with the Dictionary of Occupational Titles. Because the ALJ's failure to provide sufficient reasons for discounting Dr. Turner's opinion requires remand, the Court does not address these arguments.

3

medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is not afforded controlling weight when the opinion is "internally inconsistent… [or] where the physician's opinion [is] inconsistent with the claimant's own testimony." *Myers*, 721 F.3d at 525. Although an ALJ may discount a treating physician's opinion, the ALJ must provide a clear and well-reasoned statement explaining why he or she is discounting the opinion. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) ("When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so.") (internal quotations and citation omitted); *see McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (reversing and remanding ALJ decision when it was unclear if the ALJ discounted the consultative physician's opinion, and, if so, why).

In explaining his reasons for giving Dr. Turner's opinion little weight, the ALJ wrote:

> "[his opinion is] inconsistent with the record and his own progress notes that indicate the claimant was doing well on medication and his headaches were stable. Also, the claimant has only been to the emergency room due to pain one time since his alleged onset date, which suggests that his symptoms are not that disabling."

R. at 20. The Commissioner contends that the record evidence clearly supports the ALJ's rationale for discounting Dr. Tucker's opinion, because Dr. Tucker's opinion conflicted with his own treatment notes and the treatment notes from Plaintiff's neurologist, Dr. Nitin Sharma, M.D. ("Dr. Sharma"). The Court disagrees.

First, Dr. Tucker's opinion seems consistent with the majority of his treatment notes. Dr. Turner treated Plaintiff regularly from January 2010 until March 2011 for hearing loss, migraine headaches, vertigo, and other ailments. In January 2010, Dr. Turner diagnosed Plaintiff with

4

Meniere's disease[4] and chronic migraines. R. at 326. Throughout the treatment period, Dr. Turner prescribed Plaintiff numerous medications to alleviate the pain from his migraines and to control the nausea related to his vertigo. R. at 282-329, 351-368. Dr. Turner also consistently documented that Plaintiff's conditions significantly limited his functional capabilities, prevented him from working, and required him to use a cane to walk. *Id.*

Based on these observations, Dr. Turner wrote a letter on April, 26, 2010, in which he opined that Plaintiff suffered from ocular migraines and vertigo, required a cane to walk, and he was unemployable due to these limitations. R. at 324-25. In January 2011, Dr. Turner completed a Physical Medical Source Statement (the "PMSS") and a supplemental form about Plaintiff's balance disorders. R. at 237-240. The PMSS placed significant limitations on Plaintiff's ability to lift, carry, stand, sit, walk, push, and pull. R. at 239. Additionally, Dr. Turner opined that Plaintiff required a cane to balance and ambulate. R. at 240.

In formulating Plaintiff's RFC, the ALJ ignored the majority of these functional limitations because he claimed Dr. Turner's treatment notes were inconsistent with his opinion. However, it appears that the only conflict between Dr. Turner's opinion and his treatment notes arises from one observation during Plaintiff's appointment on October 5, 2010. In his notes from this visit, Dr. Turner stated Plaintiff was "doing well" on Ultram, which Dr. Turner prescribed for Plaintiff's migraines. R. at 297. While this does suggest that at times Plaintiff's migraines responded well to medication, this note does not conflict with any of Dr. Turner's other findings regarding Plaintiff's Miniere's disease, vertigo, and balance issues. The majority of the functional limitations noted in the PMSS arose due to these aliments, not the migraine

---

[4] Meniere's disease is "a disorder of the inner ear that causes spontaneous episodes of vertigo—a sensation of a spinning movement—along with fluctuating hearing loss, ringing in the ear (tinnitus), and sometimes a feeling of fullness or pressure in your ear." Mayo Clinic Diseases and Definitions, http://www.mayoclinic.com/health/menieres-disease/DS00535.

headaches.  R. at 237-240.  Thus, it appears that the ALJ relied on one isolated note in discounting Dr. Turner's opinion, which is an insufficient basis for discrediting a treating physician's opinion.  *See Sumner v. Astrue*, No. 11-0945-CV-W-NKL-SSA, 2012 WL 3580671, at *5 (W.D. Mo. Aug. 17, 2012) ("The ALJ's apparent isolation of a single comment by Dr. Ross at the expense of a more comprehensive review of his medical opinion is insufficient as a basis for discounting his opinion.").

Similarly, Dr. Turner's opinion also seems to be consistent with the other medical evidence in the record.  Dr. Scott Knappenberger, M.D., an ear, nose, and throat specialist, diagnosed Plaintiff with bilateral hearing loss and dizziness.  R. at 251.  Also, on March 10, 2010, Dr. Aref Zaman, M.D. noted that Plaintiff suffered from vertigo and dizziness on a daily basis.  R. at 338.  Likewise, Dr. Sharma also consistently observed that Plaintiff required a cane to walk and he suffered from dizziness and vertigo.  R. at 339-347, 224-335.

In arguing that Dr. Sharma's notes are inconsistent with Dr. Tucker's opinion, the Commissioner notes that on several occasions Dr. Sharma observed that Plaintiff's headaches were well-controlled by medication and his vertigo was "stable."  R. at 228, 237, 345.  Similar to the isolated note from Dr. Turner, these observations suggest that at times medication alleviated the pain from Plaintiff's migraines.  However, as discussed above, Dr. Turner's opinion regarding Plaintiff's functional limitations was primarily derived from Plaintiff's Meniere's disease and vertigo.  R. at 237-240.  Furthermore, Dr. Sharma's remark that the vertigo was stable does not necessarily suggest that Plaintiff's problems with dizziness, balance, and nausea from Meniere's disease had improved to the point that they no longer limited his functional abilities.  *See Hutsell v. Massarnari*, 259 F.3d 707, 712-713 (8th Cir. 2001) (noting that "doing well" with a condition does not necessarily support a finding of no disability).  Thus, it appears

6

that the ALJ should have provided a more thorough explanation of the conflict between the record evidence and Dr. Tucker's opinion before discounting it.  This is especially true in light of the fact that Dr. Tucker's opinion was the only evidence in the record that addressed Plaintiff's functional abilities.

**Conclusion**

On remand, the may ALJ may still find that the record evidence warrants a finding of no disability.  However, even if the ALJ ultimately upholds the denial of disability benefits, he should provide a more thorough discussion of the reasons supporting his decision to discount Dr. Tucker's opinion.  *See Lamke v. Astrue*, No. 10-3386-CV-S-ODS, 2011 WL 2360175, at *4 (W.D. Mo. June 9, 2011) ("[T]he Commissioner must comply with the five-step sequential process even when denying the most undeserving disability application.").  For the reasons discussed above, the Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Date:   December 10, 2013               /s/ Greg Kays
                                        GREG KAYS, JUDGE
                                        UNITED STATES DISTRICT COURT